## Harriet E. Griswold, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 14,584.

NEGLIGENCE—*when collision not shown to have been occasioned by.* An injury resulting from a street car coming in contact with certain pipes loaded upon a wagon, *held,* under the evidence, not shown to have resulted from the negligence of the traction company.

Action in case for personal injuries. Appeal from the Superior

Griswold v. Chicago City Ry. Co., 150 Ill. App. 614.

Court of Cook County; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in this court at the March term, 1908. Reversed with finding of facts. Opinion filed October 25, 1909.

**Statement by the Court.** This is an action to recover for personal injuries alleged to have been received by the appellee while riding in a street car operated by the appellant on the 5th or 6th of July, 1905. The declaration alleges that plaintiff was a passenger on a south-bound car proceeding on the west track in Cottage Grove avenue; that a certain wagon was proceeding in a southerly direction upon said west track in front of said car; that defendant carelessly, negligently and wrongfully managed, operated and propelled said car upon which plaintiff was a passenger as aforesaid, and carelessly and negligently attempted to drive or propel said car past said wagon before said wagon and the load of material thereon was safely off of said tracks, and at a sufficient distance therefrom to permit said car to pass the same without striking it, whereby the car struck the wagon, and certain pipes with which the wagon was loaded came in violent contact with the plaintiff, whereby she was injured.

There is testimony tending to show that the distance between the south and north bound tracks in Cottage Grove avenue is four feet, six inches; that the wagon contained a load of water and gas pipes, together with plumbing goods, the pipes projecting five or six feet beyond the rear end of the wagon; that after the wagon had pulled over in the north-bound track and was apparently clear from the south-bound track, which the train was proceeding, the latter slowly moved forward until the grip car had passed the wagon; that at this time the driver turned his horses out of the north-bound track toward the east curb of the street and as he did this the rear end of the wagon was swung around in such a manner that the projecting pipes struck the plaintiff, who was seated at the east end of one of the seats of the trailer car, the

seats of which ran across the whole width of the car. She was occupying the east end of the third or fourth seat from the front of the car.

The cause was submitted to a jury, which returned a verdict in favor of the plaintiff. Judgment was entered accordingly, from which this appeal is prosecuted.

FRANKLIN B. HUSSEY and C. LeROY BROWN, for appellant; JOHN R. HARRINGTON, of counsel.

W. A. FLANEGAN and COBURN & CASE, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellant that the verdict is not sustained by the evidence, that there was serious error in the rulings of the trial court upon the admission of evidence, that a new trial should have been granted because of certain newspaper articles bearing upon the case, and that the amount of the verdict and judgment are excessive.

Appellant's contention is that the accident was not caused by any negligence on the part of the employes of the appellant, but was the result of a negligent act of the driver of the wagon carrying the water pipes. These were projecting some feet beyond the rear of his wagon, when the driver, as it is claimed, suddenly turned his team to the eastward to get out of the north-bound tracks, along which he was then proceeding parallel with the south-bound train. The result of this turn was to swing the rear of his wagon westward and thus to thrust the projecting water pipes into the side of the open trailer car, striking appellee and causing injuries complained of. That the accident occurred in this manner, both sides agree, and appellant's claim is that it is thus shown to have been due to the tortious act of the driver of the wagon, a cause beyond the control of the carrier. It is urged therefore that the evidence of appellee does not make

out a *prima facie* case sufficient to throw the burden upon the carrier of showing that it was not guilty of negligence and that the burden is upon the plaintiff to show facts from which negligence of the carrier may be presumed. In Chicago City Ry. Co. v. Rood, 163 Ill. 477-483, it is said: "It is reasonable that a presumption of negligence should arise against the carrier in cases where the cause of the accident is under its control, because it has in its possession the almost exclusive means of knowing what occasioned the injury and of explaining how it occurred, while the injured party is generally ignorant of the facts. But where the cause of the accident is outside of and beyond any of the instrumentalities under the control of the carrier, its means of knowledge may not be and are not necessarily better than those of the passenger." As in that case so in the case at bar, "plaintiff's proof was equally consistent with the absence as with the existence of negligence on the part of appellant," and the burden of proof was upon appellee to produce evidence that appellant was guilty of negligence causing the injury complained of. The first of the witnesses on this point testifying in behalf of appellee was a lady sitting next to her on the same seat. She testifies that "the long pipes were extending out from the back of the wagon and the car was going along, and in a few moments there was a jolt and the pipes came in collision with the car. That is all I know." Another of appellee's witnesses was riding backward, having a newspaper, and not paying any attention until she heard the crash when the pipes came in contact with the outside of the car. Appellee herself "was busy in deep thought," "did not look on the east side where the accident occurred," heard a crash and was struck by the pipes. Up to that time she had not seen the pipes but was "looking in the opposite direction." The remaining witness in appellee's behalf, who testifies as to the manner in which the accident happened, was a man who was sitting on the same seat with ap-

pellee, in the second seat west of her, there being one
person between them. He saw the wagon containing
the pipes on the south-bound track ahead of the cable
train. His statement is that the motorman "rung a
bell or slowed up, and the wagon turned out of the
south-bound track over onto the north-bound track,
and it seems to me he went to swing on the north-
bound track to the side of the pavement;" that the
train was running "just about a moderate speed
* * * which was not very fast;" that it "slackened
up and practically stopped to allow this wagon to get
out of the track. The speed was very slow. After the
wagon had left the track it was slow. After that it
seemed to me the wagon pulled over to the curb-
stone." He says there was more than one pipe and
they were projecting from the wagon "four feet or
even longer." On cross-examination he says he thinks
that after the team and wagon "got straightened out
onto the north-bound track they made another turn
to the east." Then the following occurred:

"Q. Yes, that is your best recollection.

A. Now wait a moment. I won't—I will correct—
I do not know whether they went a little ways in this
track, or whether this was one continuous turning at
the same time from the one track to the other and
then from that track to the other. I do not think they
went—

Q. Well I understood you on direct to say, when
you were telling the jury how it happened, that they
went over onto the north-bound track and then went
along another ways and then made another turn to get
over on to the east side of the street.

A. Well I will correct that statement now after due
thought. I think they may have went a trifle, but I
think it was all in one object, all the entire—"

Subsequent questions and answers were as follows:

"Q. After they got onto the north-bound track, did
the wheels get into the north-bound track?

A. Yes, sir, they did.

Q. Yes and the horses?

A. Yes and the horses.

Q. Now they went some little distance, no matter how short it was, south, didn't they?

A. Yes.

Q. And then he turned them again to the east over into the space between the curbstone and the north-bound track?

A. Yes."

The witness further says that it "was at that turn, at that swing of the wagon that the pipes began to come around. I think the motorman was going all the while just slow. The front grip of the train went by without hitting anything and that all happened before the pipes began to turn in."

It is evident from the testimony of this witness that he is not certain how far the wagon proceeded southward in the north-bound tracks parallel with the track upon which the train was slowly moving southward, before the driver made the second turn to the east which caused the accident. It was far enough to allow the grip car to get by safely. The driver of the wagon states that after he turned into the north-bound track he drove south on the north-bound track some fifty or sixty feet before he made the second turn. It is undisputed that a considerable portion of the train had passed the wagon safely before the pipes swung into the trailer. The turn therefore could not have been continuous from the south-bound track to the north-bound and from that track to the eastward, whatever a witness may conjecture the driver's object to have been. The question is what he did, and his object can be disclosed only by his acts. The testimony in behalf of appellee shows that the gripman was exercising caution, that the train was "all the time" proceeding very slowly. On the part of appellant the gripman testifies that he was about opposite the driver of the wagon when he saw the driver "give his horses another pull to the east," that he was still

ringing his gong and that he "hollered at him and put my brakes on," after which his car ran from nine to eleven feet; that the driver did not make "one continuous turn," that the train "went fifty or sixty feet, something like that," between the time he (the driver) made his first and second turn. We are compelled to conclude that the evidence in behalf of appellee tends to show the accident was due to the conduct of the driver of the wagon in making a turn to get out of the north-bound track at a time when the cable train was proceeding along abreast of him with the gong ringing and with entire safety both to the train and the wagon. As said in Chicago City Ry. Co. v. Rood, *supra*, "the presumption that the accident was unavoidable was as reasonable as that it was due to appellant's negligence." The burden of proof was clearly upon appellee to produce evidence tending to show that the accident was caused by negligence of appellant's servants in the operation of the train, and such evidence must consist of something more than conjecture or speculation. It appears that the driver of the wagon did nothing after getting out of the south-bound track and into the north-bound track to indicate an intention on his part to make another turn until he actually began to do so. It seems not to be disputed that then the gripman immediately put on the brakes to stop the train. There is no evidence tending satisfactorily to support the theory that the gripman was not warranted in the exercise of due care to believe that it was safe for him to proceed on his way slowly and carefully, as he seems from the undisputed evidence to have done.

In view of the conclusions stated it is not necessary to consider other objections. For the reasons indicated the judgment of the Superior Court must be reversed with a finding of facts.

*Reversed with finding of facts.*